IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-0198-FL

**Angela T. O'Neal**,

     Plaintiff,

v.

**Donnie Harrison**, in his official capacity as Sheriff of Wake County, & **The Ohio Casualty Insurance Company**, as surety,

     Defendants.

**Memorandum & Recommendation**

    Defendant Donnie Harrison, in his official capacity as Sheriff of Wake County, has requested that the court dismiss the Complaint filed against him by Plaintiff Angela T. O'Neal because it fails to state a claim upon which relief may be granted. O'Neal's Complaint alleges a variety of state and federal claims arising out of her employment with and resignation from the Wake County Sheriff's Office ("WCSO"). While O'Neal's Complaint does state some claims upon which relief may be granted, a number of her claims should be dismissed. Therefore, it is recommended[1] that Harrison's Motion to Dismiss be granted in part and denied in part as outlined in more detail below.

## Background[2]

    O'Neal initiated this action on January 31, 2014, by filing a Complaint in North Carolina Superior Court that named Wake County Sheriff Donnie Harrison and his surety, The Ohio Casualty Insurance Company, as defendants. The Complaint alleges that O'Neal was subjected

---

[1] The court referred this matter for entry of a Memorandum and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[2] Because Harrison has brought a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations contained in the Complaint will be taken as true for the purposes of resolving this motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

to sexual and racial discrimination during her time as a detention officer at the WCSO and that her supervisors retaliated against her when she complained about her co-workers' actions. O'Neal seeks to recover compensatory and punitive damages for alleged violations of Title VII of the Civil Rights Act of 1964 and the commission of several state common law torts.

O'Neal, a white female, began working as a Detention Officer at the WCSO on March 25, 2012. (D.E. 1; Compl. ¶ 18.) Almost immediately after joining the Sheriff's Office, O'Neal's co-workers began making derogatory comments regarding her race and gender. (*Id.* ¶¶ 19-20.) These derogatory comments were frequently made in the presence of the inmates that O'Neal was responsible for supervising. (*Id.* ¶ 20.) Additionally, O'Neal claims that at other unspecified times, her co-workers blocked her ability to communicate with staff while stationed in the detention center's housing units; declined to relieve her so that she could eat, drink, or take bathroom breaks during her 12 hour shifts; and disparaged her professional reputation. (*Id.* ¶ 93.)

In late May, 2012, O'Neal informed Lieutenant Shonda Lucas, a black female, about racist comments and physically intimidating behavior by Officer Lynda Swann, a black female. (*Id.* ¶ 21.) Lucas told O'Neal that she should expect this type of behavior from her fellow officers. (*Id.*)

In March 2013, O'Neal sought a spot in the WCSO's Armed Transport School.[3] (*Id.* ¶ 27.) Although she received the highest physical assessment score of all the applicants, O'Neal was informed that she would not be allowed to participate in Armed Transport School. (*Id.* ¶ 28.) Eventually, after further discussions with WCSO Detention Center Director Butler and others, she was allowed to participate in the program. (*Id.* ¶ 29.)

---

[3] The Complaint alternates between calling this program the "armed transport class" (Compl. ¶ 27) and the "armed transport school" (Comp. ¶ 28). For ease of reference, the Court will refer to the program as the Armed Transport School.

In April 2013, O'Neal met with Karen Wallace, the Director of Human Resources, regarding her belief that she was being discriminated against due to her race and gender. (*Id.* ¶ 31.) Wallace responded that she had heard of similar incidents in the past and would turn the matter over to the Internal Affairs department for an investigation, which she did. (*Id.*)

On May 3, 2013, Butler informed O'Neal that Taser certification was now required to be part of the armed transport team. (*Id.* ¶ 33.) O'Neal previously told her supervisors that she could not be tased, a requirement for Taser certification, due to a medical condition. (*Id.*) O'Neal believes that this requirement was implemented to prevent her from successfully completing Armed Transport School. (*Id.*) After this conversation, O'Neal was removed from Armed Transport School and her position was offered to a black female. (*Id.* ¶ 34.)

After her termination from Armed Transport School, O'Neal became ill and left work. (*Id.* ¶ 36.) Her doctor diagnosed her with high blood pressure and weight loss caused by stress and opined that her symptoms were caused by her work environment. (*Id.*) The doctor suggested that O'Neal refrain from working as a Detention Officer until her health improved. (*Id.*)

On May 8, 2013, O'Neal filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("First EEOC Charge") asserting racial and gender discrimination. (*Id.* ¶ 37.) After filing the First EEOC Charge, O'Neal attempted to meet with Sheriff Harrison, but was told he would not meet with her because of the pending EEOC charge. (*Id.* ¶ 40.)

On June 18, 2013, O'Neal resigned from her position with the WCSO. (*Id.* ¶ 41.) Although she claims that she did not want to resign, she felt that she was being forced out. (*Id.*)

Shortly after O'Neal's resignation, the Assistant Director of Detention Services sent an email to WCSO staff stating that O'Neal was no longer employed at the Detention Center and

was not permitted employee access to the facilities. (*Id.* Ex. B.) Prior to O'Neal's termination, this type of email was only sent out when an employee was terminated. (*Id.* ¶ 42.) O'Neal believes that the Sheriff's Office sent the email in retaliation for filing the First EEOC Charge.

O'Neal alleges that the Sheriff's Office continued to retaliate against her even after she left her position. For instance, O'Neal's application for a position with the Johnston County Sheriff's Office was rejected after members of the Johnston County Sheriff's Office spoke with the WCSO about O'Neal. (*Id.*)

As a result of her belief that the WCSO was interfering with her attempts to find new employment, O'Neal filed another EEOC Charge on October 10, 2013 ("Second EEOC Charge"). The Second EEOC Charge asserted that the WCSO retaliated against her for complaining about race and gender discrimination by providing negative comments to her potential employers. (*Id.* ¶ 45.)

The EEOC issued a Notice of Right to Sue letter to O'Neal on November 29, 2013. This lawsuit followed a number of months later.

**Discussion**

I.

Harrison's Motion to Dismiss argues that O'Neal's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. The Supreme Court has explained that in order to withstand a motion to dismiss for failure to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Therefore, while a court must accept all the factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory in nature or nothing more than a formulaic recitation of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief'" *Id.*

## II.

Harrison challenges O'Neal's failure to promote claim on the ground that the Complaint contains insufficient factual allegations to establish that she was subjected to discrimination on the basis of her race and gender. O'Neal's response, which only addresses the race-based failure to promote claim, argues that she has stated a claim because the Sheriff's Office staff implemented a requirement for participation in Armed Transport School, Taser certification, that they knew she could not meet. She contends that the WCSO created this requirement specifically to exclude her from the program and then awarded her spot to a member of another class. At this point in the proceeding, O'Neal has alleged sufficient facts to proceed to discovery on her race-based failure to promote claim, but should not be allowed to proceed on her gender-based failure to promote claim.

5

O'Neal claims that she was not selected for participation in the Armed Transport School due to her race and sex. A plaintiff asserting a failure to promote claim must show that she (1) was a member of a protected group; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances that give rise to an inference of unlawful discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003). Harrison argues that O'Neal's Complaint fails to allege sufficient facts to establish that she was qualified for the Armed Transportation School and that she was rejected from the School under circumstances that give rise to an inference of unlawful discrimination.

With respect to the issue of O'Neal's qualifications, Harrison argues she was not qualified for Armed Transport School because she could not obtain Taser certification. However, O'Neal alleges that this requirement was implemented after she applied to ensure that she would not qualify for the program. (Compl. ¶ 33.) At this stage in the proceeding, O'Neal's allegations are sufficient to establish that she was qualified for the Armed Transport School.

Similarly, Harrison cannot rely on the Taser certification requirement to show that O'Neal was removed under circumstances that do not give rise to an inference of unlawful discrimination. Given that O'Neal had previously notified her supervisors that she had been directed to avoid Tasers for medical reasons and had recently complained to the Director of Human Resources about racial discrimination, it is reasonable to infer that the implementation of the Taser certification requirement after O'Neal applied for Armed Transport School was a pretext to exclude her from the program on the basis of her race. *See Derby v. Winter*, 569 F. Supp. 2d 558, 561 (E.D.N.C. 2008) (holding that plaintiff satisfied the "relatively easy test of showing ... that she was rejected under circumstances that give rise to an inference of unlawful discrimination" when facts alleged that she was initially selected as the first-alternate and that

6

she was denied advancement as a result of a method designed by a supervisor to promote a male employee). Thus, O'Neal's Complaint contains sufficient allegations to state a failure to promote claim based upon racial discrimination.

However, O'Neal's gender-based failure to promote claim, which she makes no attempt to preserve, does not fare as well. It is the general rule in the Fourth Circuit that "Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005). Here, a member of O'Neal's protected class (female) was given the slot she sought in the Armed Transport School. Although there are recognized exceptions to this general rule, *id.*, O'Neal has not argued that an exception applies here. As O'Neal has not established the necessary factors of her *prima facie* case of a failure to promote claim based upon gender, this claim should be dismissed.

### III.

In connection with the failure to promote claim, the parties also argue over whether O'Neal has alleged sufficient facts to state a hostile work environment claim. The contours of this claim are ill-defined because the Complaint does not actually contain a hostile work environment claim. O'Neal's First and Second Causes of Action set out the elements of a discrimination claim based upon a failure to promote, but the only remote reference to a hostile work environment claim comes from the use of the phase "perpetual harassment" in two separate paragraphs. Even in the context of analyzing *pro se* complaints, the court is not required to "construct full blown claims from sentence fragments …." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Wiggins v. Martin County Bd. of Educ.*, Case No. 4:04-cv-17-FL, 2004 WL 3312156 (E.D.N.C. Aug. 18, 2004) (declining to "construe the complaint as

7

brining other recognized federal claims" based upon an allegation that the plaintiff suffered violations of "human and civil rights").

To avoid this type of difficulty, the Federal Rules require parties to state each claim they wish to raise in a separate count. Fed. R. Civ. P. 10(b). *See United States v. Cochran*, No. 4:12-CV-220-FL, 2015 WL 171801, at *3 (E.D.N.C. Jan. 14, 2015) ("A properly pleaded complaint provides … 'illumination as to the substantive theory under which [plaintiff] [i]s proceeding, which is the function of pleadings under the Federal Rules.'"). However, absent an objection from the opposing party, the failure to comply with this rule does not require the court to dismiss the offending claim. *See O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 392 (1949). In light of the decision by Harrison's counsel to brief the issue as if it were properly presented in the Complaint, and the requirement that "[p]leadings must be construed so as to do justice[,]" Fed. R. Civ. P. 8(e), the court will address the hostile work environment claim.

In order to establish a hostile work environment claim, a plaintiff must prove that the offending conduct: (1) was unwelcome; (2) was based on her race or sex; (3) was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) was imputable to her employer. *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009). In determining whether a hostile work environment exists, a court must look at the totality of the circumstances, which includes consideration of the following relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Harrison makes a number of perfunctory arguments against O'Neal's hostile work environment claim. First, without citation to any supporting legal authority,[4] Harrison "contends that [O'Neal's allegations of harassment] are time barred, because they were made more than 180 days before [the filing of] Plaintiff's EEOC Charge of Discrimination." (Mem in Supp. of Mot. to Dismiss at 9.) In the following sentence, which is similarly bereft of any citations to the record or legal authority, Harrison "contends that [O'Neal's allegations of harassment] were not subjectively and objectively severe or pervasive enough to alter the plaintiff's conditions of employment and crate an abusive atmosphere,' [sic] nor were they 'imputable to the employer.'" (*Id.*) Finally, Harrison claims that aside from one specific instance of racist comments from a co-worker, all of O'Neal's allegations regarding harassment on the basis of her race and gender are conclusory in nature. (*Id.*) Although twice as long as the other arguments in this portion of the Motion to Dismiss, Harrison once again provides no authority to support the contention that the claim should be dismissed on this basis. (*Id.*)

The circumstances surrounding O'Neal's supposed hostile work environment claim are similar to the circumstances that faced the court in *Wells v. Moen, Inc.*, Case No. 4:08-cv-00180-FL, 2009 WL 2568186 (E.D.N.C. Aug. 17, 2009). In *Wells*, the district court was confronted with the question of whether a complaint stated a claim for wrongful discharge under the North Carolina Employment Practices Act. *Id.* at *4. The district court found that the complaint failed to state a claim because the relevant "portion of her complaint nowhere sets out any elements of the claim…." *Id.* The court rejected the plaintiff's attempts to flesh out the cause of action in response to the defendant's motion to dismiss because "statements in her memorandum … are no substitute for proper allegations in the complaint…." *Id.* Although the complaint contained

---

[4] Counsel for both parties are reminded that "it is not this court's responsibility to research and construct the parties' arguments." *Spath v. Hayes Wheels Int'l-Ind. Inc.*, 211 F.3d 392, 397 (7th Cir. 2000).

9

passing mention of a discriminatory discharge, the court refused to allow the claim to proceed on this ground because "it is not the court's job to rewrite the complaint in an effort to cobble together a cause of action that is not coherently stated." *Id.*

The court went on to explain that even if the complaint had explicitly contained a claim for wrongful discharge, it failed to state a claim upon which relief could be granted. Invoking the holding of *Iqbal*, the court held that the plaintiff failed to state a claim because her "bare conclusory recitation that she was terminated because of her gender and race is not entitled to be deemed true." *Id.*

As O'Neal's complaint contains all of the same flaws as the complaint in *Wells*, it should be dealt with in the same manner. O'Neal's complaint does not assert the necessary elements of a hostile work environment claim. The invocation of the phrase "perpetual harassment" and arguments in a memorandum cannot serve as a substitute for a clearly defined cause of action. Finally, even if the Complaint spelled out the elements of a hostile work environment claim, it would fail to state a claim upon which relief may be granted. In reviewing the Complaint, the only allegation that tends to indicate that O'Neal was subject to ongoing racial or gender-based harassment is the comment that derogatory comments about her race and gender were made "throughout her employment…." This statement is the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" allegation that the Supreme Court rejected in *Iqbal*. 556 U.S. 662, 678 (2009). Thus, this allegation is not entitled to be deemed true and cannot support a hostile work environment claim.[5] Therefore, it is recommended that O'Neal's hostile work environment claim be dismissed.

---

[5] This is true even though O'Neal has stated a claim upon which relief may be granted on a failure to promote claim. That claim, standing by itself, is not enough to establish a hostile work environment claim. Courts have been reluctant to allow discrete acts of discrimination to "be transformed, without more, into a hostile work environment claim." *Kilby–Robb v. Spellings*, 522 F. Supp. 2d 148, 164 (D.D.C. 2007), *aff 'd*, 309 F. App'x 422 (D.C. Cir.

IV.

Under Title VII "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The elements of a *prima facie* claim for retaliation under Title VII are (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Coleman*, 626 F.3d at 190; *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

The parties do not dispute that O'Neal engaged in a protected activity by making a charge with the EEOC. (D.E. 12, p. 10; D.E. 22, p. 10.) Thus, the court's inquiry will focus on whether the Complaint contains sufficient factual allegations to establish that she suffered an adverse employment action and that there was a causal link between the protected activity and the adverse employment action.

To show adverse employment action in a retaliation claim, a plaintiff only needs to show that the action was materially adverse, meaning that that action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). Harrison maintains that the only adverse actions occurring after O'Neal filed her First EEOC Charge are: the denial of her request to be transferred to another position, the denial of her

---

2009); *see also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) (noting that the bulk of the "hostile" events on which the plaintiff relied were the very employment actions he claimed were discriminatory or retaliatory and concluding that a plaintiff "cannot so easily bootstrap discriminatory claims into a hostile work environment claim"), *aff'd*, 222 F. App'x 5 (D.C. Cir. 2007); *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims ... are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."). *See also Moss v. Pasquotank County*, No. 2:10-CV-56, 2012 WL 2325846, at *10 (E.D.N.C. June 19, 2012).

request to meet with the Harrison, the removal of her from the armed transport team class, the department-wide email advising that she was no longer employed by the Sheriff's Office and/or the alleged bad reference given to the Johnson County Sheriff's Office. (D.E. 12, p. 10.) Harrison argues that these actions are not sufficiently materially adverse to dissuade a reasonable person from making a complaint of discrimination.

However, in addition to the actions cited by Harrison, O'Neal contends that she was pushed into resigning her position. Constructive discharge is considered a form of adverse employment action. *Swaso v. Onslow County Bd. of Educ.*, No. 7:13-CV-224-FL, 2015 WL 163060, at *14 (E.D.N.C. Jan. 13, 2015) (citing *Fulford v. Alligator River Farms, LLC*, 858 F. Supp. 2d 550, 559 (E.D.N.C. 2012)). Therefore, for purposes of the Motion to Dismiss, O'Neal has satisfied this element of her retaliation claim.

As to the third element, "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price*, 380 F.3d at 213. Generally, however, the passage of time alone cannot establish causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (*per curiam*) (internal quotation marks omitted). Here, approximately six weeks elapsed between the protected activity, the filing of the First EEOC Charge, and the last retaliatory action, O'Neal's separation from the Sheriff's Office. The protected activity and last retaliatory act are sufficiently close in time to establish a causal connection between the two. *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989) (holding three-month time period between

protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation). Therefore, O'Neal's Complaint establishes the essential elements of a retaliation claim and Harrison's Motion to Dismiss should be denied on this claim.

V.

O'Neal's Fifth Cause of Action seeks relief for what she contends was a wrongful discharge in violation of public policy. Generally speaking, North Carolina allows employers to discharge an employee "for no reason, or for an arbitrary or irrational reason." *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 175, 381 S.E.2d 445 (1989). However, North Carolina's courts have recognized an exception to the state's at-will employment doctrine if an employee is terminated for a reason that is contrary to North Carolina's public policy. *Id.*

A key element of a claim for wrongful discharge against public policy is that the employee is discharged by an employer. North Carolina's state and federal courts have repeatedly refused to acknowledge a claim of wrongful discharge against public policy that is based upon constructive discharge. *Warren v. Smithfield Packing Co.*, No. 5:14-cv-71, 2014 WL 1691513 (E.D.N.C. Apr. 29, 2014); *Baldwin v. Tradesmen Int'l, Inc.*, No. 5:12-cv-00116, 2013 WL 1192314, at *9 (E.D.N.C. Mar. 22, 2013); *Parker v. Miller & Long Constr. Co.*, No. 5:10-cv-282, 2101 WL 5478466, at *2 (E.D.N.C. Dec. 30, 2010). Given that the tort of constructive wrongful discharge is not a recognized cause of action, O'Neal's Fifth Cause of Action should be dismissed.

13

Case 5:14-cv-00198-FL   Document 30   Filed 02/13/15   Page 13 of 18

VI.

O'Neal asserts a claim of intentional infliction of emotional distress ("IIED") generally based on the emotional distress caused by the alleged discrimination and retaliation. Under North Carolina law, the essential elements of IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Zenobile v. McKecuen*, 144 N.C. App. 104, 110, 548 S.E.2d 756, 760 (2001) (citation omitted). Harrison argues that O'Neal failed to allege conduct that is considered extreme and outrageous under North Carolina law and failed to establish that she suffered from severe emotional distress as a result of the alleged conduct. After reviewing the Complaint and the relevant law, it is recommended that Harrison's Motion to Dismiss this claim be denied.

The Court must decide whether the alleged conduct is sufficiently extreme and outrageous to support an IIED claim. *Mitchell v. Lydall, Inc.*, No. 93–1374, slip op. at 3, 16 F.3d 410, 1994 WL 38703 (4th Cir. Feb. 10, 1994) (unpublished *per curiam* opinion); *Foster v. Crandell*, 181 N.C. App. 152, 168, 638 S.E. 2d 526, 537 (2007). To be considered "extreme and outrageous" the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citations and quotation marks omitted). "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Country Club Co.*, 70 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986). "'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting Restatement (Second) of Torts § 46 cmt. d.), *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). In the employment

14

context, this is an "extremely rigorous standard." *Thomas v. Northern Telecom*, 157 F. Supp. 2d 627, 635 (W.D.N.C. 2000).

Here, the Complaint alleges that O'Neal's co-workers blocked her ability to communicate with staff while stationed in the detention center's housing units; declined to relieve her so that she could eat, drink, or take bathroom breaks during her 12 hour shifts; and disparaged her professional reputation. (D.E. 1-2, ¶ 93.) O'Neal asserts that these actions rise to the level of extreme and outrageous conduct because, in the unique setting of a detention center, these actions jeopardized her safety and security. (D.E. 1-2, ¶ 93.) If O'Neal's co-workers intentionally subjected her to risks that threatened her safety this conduct could be considered extreme and outrageous. *See Watson v. Dixon*, 130 N.C. App. 47, 53, 502 S.E.2d 15, 20 (1998), *aff'd*, 352 N.C. 343, 532 S.E.2d 175 (2000) (extreme and outrageous behavior found where defendant frightened and humiliated plaintiff and threatened her personal safety). At this stage in the proceeding, these allegations are sufficient to establish extreme and outrageous conduct.

O'Neal claims that she satisfied the severe emotional distress element of an IIED claim because she suffered and continues to suffer mental anguish and emotional and physical distress as a result of her co-workers' actions. (*Id.*) In order to show severe emotional distress, a plaintiff must "do more than simply state that he has suffered severe emotional distress; there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *May v. City of Durham*, 136 N.C. App. 578, 586, 525 S.E.2d 223, 230 (2000) (internal quotations omitted).

The Complaint notes that O'Neal experienced high blood pressure and weight loss that her physician attributed to her work environment. (D.E. 1-2 at ¶ 36.) Indeed, these types of symptoms may constitute severe emotional distress. *See Parker v. D.R. Kincaid Chair Co., Inc.*, No. 5:10-CV-97, 2011 WL 3347905, at *3 (W.D.N.C. Aug. 2, 2011) (holding that allegations that a physician's determination that weight loss, acne, and heightened anxiety were related to work conditions satisfied the severe emotional distress element of an IIED claim). These facts are sufficient to carry O'Neal's burden at this stage of litigation and to survive a motion to dismiss.

Harrison also contends that, because the complaint does not allege that Harrison committed the alleged extreme or outrageous acts, O'Neal has not stated a claim against him. However, an employee's tortious conduct may be imputed to the employer where the employer fails to investigate reports of misconduct, having previously received information that would prompt a reasonably prudent employer to investigate further. The Complaint contains these types of allegations. (*See, e.g.*, D.E. 1-2, ¶¶ 21, 22, 28, 29, 31, 32, 38, 65, 75-77, 95, 99, 100.) Accepting these allegations as true, it is reasonable to believe that Harrison was aware of O'Neal's complaints, failed to investigate them, and failed to take steps to curb the offensive activity. *See Watson*, 130 N.C. App. at 53-54, 502 S.E.2d at 20 (allowing supervisor liability for IIED when the employee made repeated complaints to management regarding the conduct that formed the base of his claim).

XII.

North Carolina law recognizes a claim against an employer for negligence in employing or retaining an employee whose wrongful conduct injures another. *Hogan*, 70 N.C. App. at 494, 340 S.E.2d at 123. "In North Carolina, a plaintiff must prove two elements to hold an employer liable for negligent supervision or retention: (1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 249–50 (4th Cir. 2000) (citing *Hogan*, 70 N.C. App. at 495, 340 S.E.2d at 124); *Cooper v. Smithfield Packing Co., Inc.*, No. 7:13-CV-0145-F, 2014 WL 794046 (E.D.N.C. Feb. 27, 2014); *Wilkerson v. Duke Univ.*, 748 S.E.2d 154, 160 (2013). However, the Fourth Circuit has also held that the tortious conduct at issue must be a common law tort. *McLean v. Patten Cmtys, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003). As a result, O'Neal's negligent retention claim must be based on tortious conduct other than the alleged violations of Title VII.

As indicated above, O'Neal has stated a claim for IIED. This common law tort can form the basis for a claim of negligent retention or supervision. *Hogan*, 79 N.C. App. at 494, 340 S.E.2d at 124. Additionally, the Complaint demonstrates that Harrison had reason to know of the employees' "incompetency" because of the repeated statements by Sheriff's Office personnel that the discriminatory acts occurred repeatedly and were tolerated by Sheriff's Office management. Thus, it is recommended that O'Neal's claim of negligent supervision or retention be allowed to proceed.

VIII.

Finally, Harrison challenges O'Neal request for punitive damages in her prayer for relief. "It is well settled that under North Carolina public policy, in the absence of a statute indicating

otherwise, a plaintiff may not recover punitive damages against government entities." *Efird v. Riley*, 342 F. Supp. 2d 413, 430 (M.D.N.C. 1997); *Long v. City of Charlotte*, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (1982); *Crain v. Butler*, 419 F. Supp. 2d 785, 793–94 (E.D.N.C. 2005) (under North Carolina law, punitive damages could not be recovered against sheriff in his official capacity). In her response, O'Neal conceded that she cannot recover punitive damages against Harrison in this case. Thus, her claim for punitive damages should be dismissed.

## Conclusion

As set out in detail above, it is recommended that Harrison's Motion to Dismiss be granted in part and denied in part. The following claims should be dismissed for failure to state a claim upon which relief may be granted: O'Neal's gender-based failure to promote claim, her hostile work environment claim, her wrongful discharge in violation of public policy claim, and her claim for punitive damages. Conversely, the following claims should be allowed to proceed: O'Neal's race-based failure to promote claim, her retaliation claim, her claim of intentional infliction of emotional distress, and her claim of negligent retention or supervision.

Dated: February 13, 2015.

*Robert T. Numbers II*
_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE